Settoon Towing, L.L.C. Okay. Mr. McLeod. Good morning, Your Honors. Marty McLeod, Phelps Dunbar, on behalf of Marquette Transportation Company. May it please the Court. This appeal arises out of a vessel collision that occurred on February 22nd of 2014 between the Settoon vessel, the Hannah Settoon, which had two tank barges, and my client's. Mr. McLeod, we've read the briefs, and we do know about just the basic facts.       The sixth is that there was a collision. The seventh is that there was a collision. The eighth is that there was a collision. helpful to you, but we know what the case is about. Okay. Well, this appeal presents two main issues. Number one, it's a matter of first impression on what does the 2709 contribution article under OPA mean, and number two, the fault allocation by the District Court. OPA, the section 2709 of OPA provides that, quote, a person may bring a civil action for or another law. Settoon incorrectly argues that it may bring its contribution action against Marquette under this act, meaning under the OPA. Marquette correctly argues that Settoon's contribution claim must be brought under another law, meaning a law under the OPA, and the reason that it has to be brought under another law is because Marquette cannot be a responsible party under the act. Under the act, Marquette can only be a responsible party if it is deemed under 2702 D1A to be the sole fault third party. So the question before the Court today on a matter of first impression is, how can a section 2709 contribution claim be made, quote, under this act against Marquette when Marquette is not a, quote, person who is liable or potentially liable under this act in the first place? If Marquette is not liable or potentially liable under this act, meaning the OPA, then Settoon's contribution claim must be made under another law. Here, Marquette was not found to be a responsible party because it was not the sole party, so it cannot be liable under the OPA. And because it cannot be liable under the OPA, the only claim that for contribution that can be asserted by Settoon against Marquette is under another law, and that law is the which excludes purely economic claims. Settoon in the district court's interpretation of section 2709 in grammatical terms means that the adjective prepositional phrase, quote, under this act or another law that's part of the dependent clause of who is liable or potentially liable modifies not the noun person that is immediately before it in the statute, but instead the word contribution earlier in the same sentence. Indeed, Settoon loosely paraphrases section 2709 throughout its brief, I counted 14 times, as contribution under this act. But that's not how the statute is written. Such reading is incorrect as a matter of grammar, which rules state that an adjective prepositional phrase modifies the noun immediately before it. In other words, Settoon in the district court rewrote section 2709 to read, a person may bring a civil action for contribution under this act or another law against any person. That's not how Congress wrote the act. Notably, in their rewriting, Settoon in the district court deleted the remainder of the sentence, who is liable or potentially liable. Thus, their writing does not give meaning to all the words in the statute. It would render those words useless surplusage, as they refer to in their brief. Here, Settoon must concede that the OPA only applies to claims against responsible parties. That's what 33 U.S. section 2702A states. Settoon also must concede that Marquette cannot be a responsible party. Why? Again, Marquette cannot be designated a responsible party under OPA because the Settoon barge was the source of the spill. OPA is explicit in section 2702A in narrowly providing that only a responsible party for a vessel, quote, from which oil is discharged is liable for the covered removal costs and expenses set forth in section 2702B. And subparagraph 2702D1A, which the district court never addressed in its opinion whatsoever, allows for only one instance when a third party such as Marquette may also be treated as a responsible party for purpose of liability under the OPA. And that is sole fault of the third party. But Marquette was not solely at fault. The result is that Marquette cannot be a responsible party. And because Marquette cannot be a responsible party under the OPA, it cannot be a person who is liable or potentially liable under this act. And again, that means that Marquette can only be responsible under another law. And the other law is only the general maritime law, which is numerous decisions that we cited in our brief as well as secondary sources recognize. In our original brief, we cited this court to district court decisions and to secondary sources that have unanimously recognized that the general maritime law and not the OPA necessarily govern section 2709 contribution action between two tort feasors in the maritime collusion context because there is no OPA contribution claim. I will address one of those decisions, the Geberich holding. I address Geberich because, as you know, I indicated this is a matter of first impression. Geberich was addressed by a panelist of the court earlier. In Geberich, Judge LaMalle held that a responsible party's contribution action against a non-disserging third party who was not solely at fault for a collusion could not be brought under the OPA but could instead be only brought under another law other than the OPA. The designated responsible party in Geberich, Justice Satoon argues here, contended that its designation as a responsible party did not preclude the other vessel from also being a responsible party. Judge LaMalle disagreed because subparagraph 2702 D1 capital A of the OPA only allowed a third party to be treated as a responsible party when the third party was solely at fault. Thus, Judge LaMalle correctly disadmissed the contributions under the OPA but allowed the other contribution remains under another law, the general maritime law, to proceed. This court later reversed Judge LaMalle's ruling because the complexity of the case required further factual development. But despite this reversal and other grounds, this court held that, quote, liability under the OPA, close quote, only, quote, shifts to the third party, close quote, in the event of the third party's sole fault. Thus, to be liable under the OPA, Marquette must be solely at fault. Marquette was not solely at fault, so again, we default to what other law could be out there to provide a right of contribution? The general maritime law recognized that right of contribution. We also want to point out that Satoum contends that OPA must be interpreted in an equitable manner and that it would be inequitable not to allow contribution under these circumstances. But to be clear, Satoum will recover all of its damages under the general maritime law except the purely economic losses. So Satoum will recover its barge damage, its loss of use, its removal costs, and for the other claimants who did not bring purely economic loss claims. In short, Satoum will recover most all of its damages, but it cannot recover damage that the general maritime law does not allow under Draub and Stradach, and that is losses for purely economic reasons. And as we know from the language of OPA and the meeting holdings we have cited in our briefs, OPA was intended only to alter the general maritime law as to responsible parties. I know it has been written, Justice Clement, in the Westchester case. OPA is intended to have a comprehensive regime for oil pollution liability, but that comprehensive regime applied to responsible parties. Under 2751, it specifically reserved other laws, including the general maritime law. To be clear, OPA could have easily been written by Congress to provide that both sole fault and partially at fault third parties may be responsible parties and thus, quote, liable under this Act. But that is not OPA's language, and that's not what the apparent choice that Congress made. OPA is explicit. Only sole third-part parties may be responsible parties, and only responsible parties are liable under the Act. You're going to address your complaint about the apportionment of damages, the 6535? Yes. In terms of the apportionment, we recognize the deferential standard awarded to the trial court, but in a joint fault collision, the courts typically evaluate the number and the quality of faults. In this case, when you read the district court's opinion, the two faults were assigned to Satoon and its captain, Dean. Failure to stay clear and failure to take early and substantial action. And two faults were assigned against our pilot, Pilot Clark. Failure to maintain a lookout and failure to maintain course and speed in the overtaking situation. But there was also a third act of negligence, and that third act of negligence was that their pilot, Captain Dean, released our vessel from their agreement. And so if you were at trial, you would know that the whole course of the trial, there was a big debate over was that agreement breached or was it not? That was what the whole case was about. And they knew it and we knew it, and when the decision was written, the court found in our favor that he had released us. And there's no discussion whatsoever with all due respect to the district court, there's no discussion in the district court's opinion about the quality of faults. There's only discussion on the number of faults. And so what the district court did, in our opinion, she turned upside down the legal regime for lenient rules, which meaning our vessel, a thousand foot line tow with limited maneuverability, was being overtaken. We're the stand-to-own privilege vessel. Their vessel, the Hannes de Thun, who was overtaking us, was the give-away burden vessel. But she flipped that regime and found 65 percent fault against us and 35 percent against them. But you didn't really attack any of the findings of fact that the district court  That's exactly right. We just attacked the fault apportionment. What are we supposed to do? I'm sorry? It's all based on facts, and if you're not complaining about the facts the district court found, then I don't know how the apportionment can be reassigned. This court has the power to modify any decision. And we cited the In re Hellenic case in which the district court initially found a 50-50 fault allocation, but then reversed and issued a finding of 65-35. So this court can reallocate fault based upon a correct application of the law in this case. Well, the only law you're talking about, though, it seems to me is what commonly is done, looking at indicia of fault, how many errors did one side makes as the other. It doesn't seem to me that's any rigorous law that we need to apply. She explained herself as to why. I mean, the decision was explained as to why it was done this way. Anyway, we'll have to wrestle with that. But it seemed to be a small part of your briefing and maybe a small part of your argument today. Judge, clearly, I mean, you know, we know that on the issue of law, there's the NOVA review. And this is a matter of first impression, and so we may have took more time in our brief because of that basis. Obviously, a clear error and a deferential standard view were only if you can conclude that there's a firm conviction that a mistake has been made, would you reverse that. However, when I read the district court decision, frankly, I thought there was a typographical error when I read the first time that there was the fault allocation was written. Because if you read the opinion, the Satoon's captain's negligence was discussed first, and there were three numbers of faults. There's no discussion of the quality of faults as compared to our captain, our pilot Clark, who had two faults. And then you go to the fact that she agreed with our expert and with the testimony that they had released us. And that's what the whole case was about. But I do recognize that I have an uphill burden there. So with that, I'd be happy to answer any other questions. Thank you. Thank you, Mr. McKibbin. We have time for rebuttal. Mr. Tillery. Good morning, Your Honors. Jeff Tillery on behalf of Satoon. If the Court would indulge me, I would address liability allocation of fault first and then skip to contribution. My opponent just said something I think is very accurate. He said if you were at trial, you would understand. And that's the truth. You were at trial, so this is why I would ask you to give deference to the trial judge, obviously. If you look at the trial record here in this case, it was a three- or four-day hard-fought collision trial involving two vessels colliding on the river. Experts testified. Captains testified. It was high-tech, judges. It was high-tech. We have this automatic identification system now that shows you its vector lines, and they're all drawn up on a computer screen as to who was moving where and whatnot. It's all in the record. This judge, this trial judge, evaluated the credibility of the witnesses, looked at all this high-tech information, looked at the speeds of the vessels, looked at the radars, and made her credibility calls. She wasn't clearly wrong. Quite frankly, if she had decided 50-50, I couldn't argue. If she had decided 60-40 the other way against me, it would be tough for me to argue that she was wrong. What would you focus this on in the record that would make – what particular thing did your opponent do, the other party do, that would have made it more liable?  What would the Marquette vessel do to cause this accident, in my opinion, 100%, arguably? If this is the Marquette vessel facing that way – No computer graphics here? This is my computer graphic. Okay. This is the Marquette vessel going southbound right here. This is their starboard side. This is the Satoon vessel right here. We reached this agreement to – he's going to hold his position in course. Rule 17 says you must hold your position in course if you agree to let my Satoon vessel pass. Okay? And so what happened is we reached this agreement, and my Satoon vessel starts cruising by. And what he does before I pass, he cuts, he tops around, cuts and backs into me and collides with me like this. The judge said I was at fault because I should have gotten further out. I get that. Okay? But he violated the lookout rule, the lookout rule which requires you to look out and look around you to make sure where you are, and he violated Rule 17 which says you must hold your course and position and let this vessel pass. The one thing she got wrong was this custom, this idea that if my vessel says – my vessel back here says, appreciate your patience, Cap. That somehow – those four words somehow release the Marquette vessel from this passing agreement. Fifth Circuit says customs like the Point Bend custom. The Point Bend custom has been around for 100 years. A custom of appreciate your patience is just not a custom on the river to make it contradictory to the navigational inland rules. She got it right later. She said it doesn't matter. Even if it is a custom, this guy on the Marquette vessel should have turned around and looked. Because if he had turned around and looked, he would have seen that Satoon wasn't passing and he came up. That's all. In a nutshell, he backed out of his driveway without looking, essentially, is what this is. How can you overturn that? That's just my position on that. Thank you. What about contribution? Yes. I'm going to try to respond for a minute. Mr. McCloud mentions the Garber-Eck decision by Judge Lammel. Not only has it been reversed, but Judge Lammel's decision has a couple of decisions, and if you look back, in one of his decisions he says contribution does exist under OPA, and the other one he says it doesn't. It's a little confusing, but it's also not binding on this Court. Mr. McCloud reads Section 2709 as he reads it. I understand. But what he doesn't read to you is the single most important thing, I think, that drives that whole act, the legislative history. On page 20 of our brief, the legislative history, the Senate, who enacted this case and demonstrates that contribution is available, the example is as follows. I'm not a big reader of things. I know we shouldn't do that, but I'd like to just read the example for a second. Page 20 of our brief. This section, Section 2709, the contribution section, might come into play in an instance where more than one party is involved in a spill. For example, a spill may occur when oil is being transferred between a vessel and an onshore facility. If the discharge comes from the vessel, it is the vessel that will be the responsible party, just like Satoon here. Nevertheless, if an action or omission on the part of the onshore facility contributed to the discharge, the operation of this contribution section or the section on subrogation could result in the facility being held accountable financially in part or in whole. Those last words are crucial to show the intent of Congress that contribution was clearly intended. Not only is it equitable, it was clearly intended. Your briefing tries to distinguish between the section on contribution and the later section on subrogation. Is that a viable distinction, you think? Can you defend that for me now on how that plays? Absolutely. I think it's big, Judge, for this reason. Contribution is when I contribute to something. Two people are involved in it. They contribute to cause an incident. Well, I'm just talking about how the statute has written this. I think we know the difference between contribution and subrogation. So how does the statutory different sections play out against the historical rule that you don't have solely economic damage or coverage? I think I understand what you're asking. The subrogation rule applies when I, the responsible party, pay the innocent third-party economic victims. Then I am subrogated to those innocent third-party victims against the 100% sole party liable person. The Coast Guard designates a responsible party. I pay it. Coast Guard decides it's me, but I say, uh-uh, it's 100% somebody else. That's okay. I pay the innocent third parties. And I'm subrogated to them to get 100% from the 100% fault party. The point of it, Judge, is why would we have a subrogation section that applies to the 100% sole fault party and a contribution section that only applies to a 100% sole party? That's the surplus. I can't say the word. Surplus. That's why it makes no sense to have both. If I could talk a minute about why Marquette's interpretation would frustrate the purpose of OPA. The purpose of OPA is you designate the responsible party the source of the oil, in this case, Satoon. Satoon is strictly liable. That's perfect. But Satoon is strictly liable. They must pay all the innocent parties, the claimants, including the economic claims, which are now recoverable under OPA that used to not be recoverable under Robbins-Drydahl. Then the responsible party at that point gets to fight it out with the people who he believes or she believes is responsible. But the purpose of the act is to take care of the innocent people, get rid of litigation, calm everybody down, and then the real people who could potentially be at fault would then fight it out. And it makes sense for this reason. If we interpret it the way Mr. McCloud wants us to interpret it, what if Marquette was 99% at fault? What if they were 99% at fault? That would mean they just escaped, totally, because I have no contribution claim against them. On economic damages. On economic damages. True. That's right. That's true. Yes. Now, he also says that it's only against 100% — the contribution article in 2079, only against 100% fault party. But if that's the case, that's indemnity. That's not contribution. And I know you know the difference between indemnity, contribution, and subrogation, Judge. Explain anything you want to explain. Okay. But that's indemnity. Of 100%, I'm making myself whole. I'm making myself — that's an indemnity clause. That's not contribution. So the interpretation is wrong. And I got to thinking, what would I do as a maritime lawyer? What would I do as a maritime lawyer if I didn't have a contribution claim and this happened again? Okay? And it would frustrate the act, the purpose of the act. Because what I would tell Satoon at that point is, Satoon, you're designated the responsible party, but it's 100% Marquette. It's their fault. But you don't have a contribution claim against Marquette. We've got to do anything possible to get around this responsible party situation. I would appeal it, go up the administrative remedies, file a deck action. I would do whatever I could do within the bounds of the law, getting creative, to avoid having to pay the innocent third parties and force those innocent third parties to come to court and sue Satoon and Marquette. Why? Because Satoon doesn't have a contribution claim against Marquette. So I want those third parties to get a judgment against Marquette for 50% or 100%. Bottom line is that it would discourage the Satoons of the world who are designated the responsible party. It would discourage them from settling cases and moving forward against the responsible parties. Under your view of the OPA, what is the role of 2702D-1 in general, which starts with third parties having to be solely responsible? What role does that play in the statute that allows the contribution section later not to require sole responsibility? Then how does 2702D, which talks about liability of third parties and elements as an aspect of elements of liability, the only time, the only description in general of third parties as responsible parties is when they are solely liable, solely responsible for the accident. All 2702 is is a different section, subrogation section, which permits subrogation against 100% third party fault party. But if you look at 2709, contribution is different. It says for contribution against any other person who is liable or potentially liable under this Act. Well, D certainly doesn't talk about subrogation. It talks about third parties treated as responsible parties. If I misstate something, you'll know it. You know this better than I do. But it talks, wants to show that third parties are solely responsible. They shall be treated as responsible party or parties for purposes of determining liability under the subchapter. Now, I don't know what the subchapter is, but I think it's all of 27, all the numbers that we're talking about. I think I understand the question, Judge. It is not an article which says that's the only remedy in the entire Act. It is not an article that says that. It is an article that says there is subrogation against 100% responsible part, 100% at fault parties. 2709 says you have contribution against any other person. Now, any other person, Judge, could be a responsible party, any other person who is liable or potentially liable. Marquette in this case clearly was potentially liable in this case. Even if you want to read it as modifying the words before, as Mr. McCloud wants you to do. So I think we might be missing each other a little bit. I'm thinking I understand. Well, it would be better for us if these vessels had missed each other a little bit. We're missing. It's not quite as damaging. I'd like to also read. But let me ask you about 2709 in the language that you're emphasizing. Does it matter in statutory interpretation, you think, interpretation of this statute, that it doesn't just say in 2709 for other responsible parties, but potentially responsible? Well, it seems to me that that throws open, potentially in support of your position, that contribution can come from not just a solely responsible party. You can be suing a variety of people, three or four entities who are responsible, potentially responsible. And that's not a search just for the solely responsible party so they can contribute, that you're going to have a collection of people and the district court sorts out who's got some liability. So it does seem to me solely responsible as well as responsible is at least saying that that contribution action can be broader than just seeking the solely responsible party. And that's absolutely one of our arguments, is that even if those words, who is liable or potentially liable, modifies the phrase right before, Marquette was absolutely potentially liable in this case. And therefore, the contribution claim exists. Another point is, Judge, if you look through the statute, and we cite this in the briefs, there are several sections in there that give different statute limitations for subrogation versus contribution and different remedies and different rules with respect to contribution and against, and for subrogation, which demonstrates that there's a big difference. Two additional things. I know I have five minutes. Judge Barbier in Deepwater Horizon. Judge Barbier, who we know, has handled Deepwater Horizon since 2010. He says this in Deepwater Horizon. The intent of OPA is to encourage settlements and reduce litigation. Third-party claimants present their claims to the responsible party who pays the claims and is then entitled to seek contribution from the other negligent parties, section 2709. That's Judge Barbier in Deepwater Horizon that is cited in our brief. Two additional things. He's very knowledgeable. I'm sorry. He is very knowledgeable. He may not always be right. He was a maritime plaintiff's lawyer for many, many years, and he and I butted heads, but he's brilliant on this one for sure. Judge, here is two additional things. I have a minute. OPA was intended to allow broader class of claimants to recover economic loss than maritime law, which requires physical injury. There's two maritime principles that are analogous to why this contribution should be permitted. Two maritime principles I'll ask you to consider as you digest this case. In a maritime setting, a vessel owner is strictly liable for unseaworthy conditions to the seamen. And sometimes that vessel owner is also negligent. He might be strictly liable and negligent of 20%. But maritime law gives him the right of contribution against an at-fault third party who might have created that unseaworthy condition for which the vessel owner is strictly liable. Contribution has been around forever, maritime law. Same thing for maintenance and cure. Strict liability. A vessel owner is strictly liable for the maintenance and cure payment, but he also may be a little negligent in something he does to the seamen. But he has a contribution claim against the third party at fault who made him pay the maintenance and cure because he's strictly liable for that third party's percentage of fault. Finally, I was trying to think of an example that might work, and it's like this, on the contribution issue. If I'm a fisherman in southeast Louisiana and I'm on a small boat and I'm doing what we all have done in the Gulf of Mexico, you have a rig hook and you tie up to one of these unmanned platforms and we throw the rig hook up on there and we catch our trout. If I'm the third party and I look at that platform and I see a rusted piling on that platform, it's rusted out, it's horrible, and I know before I throw the rig, it could be dangerous. It could be dangerous. But you know what? I'm thinking to myself, ah, if I bust that piling down and spill oil all over the place, that platform owner is going to be the responsible party. He's got no contribution claim against me, so to heck with it. I'm going to throw it up there anyway because I can't really get sued for any oil spill. I realize that fishermen aren't thinking about contribution claims when that happens. I get that. Okay? And I get that it's not going to necessarily do anything other than maybe the lack of a contribution claim against third parties like Marquette would somewhat discourage safety, maybe. It certainly, certainly wouldn't encourage safety. What you're telling us are some very good reasons that the statute ought to provide for the kind of contribution you're talking about. Our issue is, does it provide? I mean, you're giving us some policy reasons, and we ought to read the Act, I'm sure, in a way generally supporting a good policy. But we've got to find the words in the statute to make that happen. And I understand. And, Judge, I think I could say a couple of things. I tried to articulate in this oral argument things that weren't argued in our brief. I tried to do that, number one. But, number two, if the statute is a little ambiguous or vague, if it is, arguably, you certainly have to look to the legislative history, which we have cited in detail in page 19 and 20. The legislative history is just abundantly clear that contribution is available. In addition to the argument, and I ask you to consider the argument that why do you need Section 2702 for subrogation? Why do you need that and the contribution section? If the contribution section only applies to those who are 100 percent at fault, that only applies to that, then, as Marty would want you to say, to believe, why then do you need both? Thank you, Your Honors. All right. Thank you, Mr. Tillery. Mr. McCloud, you've saved time for rebuttal. Would you mind starting with answering the question you were just asked? Why do you need 2709 if all you're doing is figuring out who fits under 2702? The misconception about that is there is a OPA contribution claim, setting aside another law claim, and an OPA contribution claim would apply in two circumstances. It's not just the sole fault under 2721A. It can also be for multiple responsible parties, just as in the Deepwater Horizon case, which I know you all are involved in. In that case, Anadarko, BP, they were many people who were at fault, MoEx, and so they had contribution claims against each other. So if BP, as a responsible party, paid for the damage in the first incidence, then it could proceed against Anadarko or its other joint owners in that. So it's not just a sole fault party. There can be multiple responsible parties. There could be two vessels that both have oil in their tankers, and they collide, and there's a joint fault. So they could seek contribution from each other. But, again, the purpose of OPA, from our perspective, is to establish a comprehensive review as to responsible parties. Otherwise, it wanted to leave the law as it stands. And in this case, you asked the question about could Marquette be potentially liable. Well, he could pursue an OPA contribution claim against us, but we've been found not to be liable, and so the act would not apply to us. We're not potentially liable. We are not a sole fault party. So that's the answer to that question from our perspective. In addition, about the legislative intent, I think we all need to be careful about reviewing legislative intent. The statute states what it states. We think it's clear. We think it's unambiguous. But the district court also erred because she cherry-picked, and what she cited was as far as it went, but it didn't go far enough. Because if you look from the prior section, from the House on that, it talked generally about that you could have an OPA contribution claim under OPA, but you could also have it under another law. So when you follow the section the district court cites, when they talked about a vessel and a facility owner potentially having a contribution claim, that passage was referencing not only a claim under OPA, but also potentially a claim under another law. Does that make sense? I'll have to decide, but I understood what you said. All right. And, again, subrogation, they keep bringing up subrogation. We've never mentioned subrogation. Subrogation only applies to a claimant. Contribution is a completely different legal concept. We think that's apples and oranges. And in terms of the best statutory argument that 2709 must be 100 percent liable parties. Well, again, my argument is not that it's got to be 100 percent liable. It's got to be. The only contribution that's relevant is if you find someone else who is solely liable. Or another responsible party. Our interpretation of the statute is that the OPA contribution claim, setting aside the another law claim under whatever that law may be, in this case General Maritime, is only if that other person is a responsible party. Okay. But what I'm saying is what other part of OPA is the statute you're relying on section that makes 2709 mean what you just said? Well, if you look under 2703, 2703 requires that a responsible party cannot recover against unless they, even if they're 1 percent at fault. So the concept that it's inequitable for them to be 1 percent at fault versus 99 percent at fault, that statute says that even if they're 1 percent at fault, even if there's an act of God but they didn't do enough, they still have to pay for all the damages. So OPA was not enacted to be an equitable statute like the Clean Water Act. It has penalties. It's strict liability. And it should not go without being noticed that Satoon, they're the ones who chose to haul hazardous cargo. When Marquette set sail that day, they had grain barges. They could never be an OPA responsible party. On the other hand, Satoon negotiated rates for the cargo that they were doing. They paid insurance premiums. And so we disagree that it's inequitable. In fact, from our perspective, it's equitable the way we interpret the statute, which we think the plain language supports, versus their interpretation that under this act it somehow modifies contribution versus person. We think that the talismanic that says under this act relates to who is liable, potentially liable, a person, not contribution. One other thing. They talk about that it's only indemnity. It's not indemnity. There's a whole separate section on indemnity. And, again, we think that supports our analysis that, except for responsible parties, the courts wanted, the Congress wanted to allow people to pursue under what other contracts they may have, et cetera. So subrogation is preserved, indemnity is preserved, and contribution is preserved. And lastly, I mentioned Judge Barbie. It's not a big deal, but if you really hit Judge Barbie. Your time has expired now. Thank you. I appreciate that. Your case and all of today's cases are under submission. Court is in recess.